FINANCIAL SERVICES, INC., Plaintiff,

v.

David KULMAN and Dollie C. Kulman, individually and trading as David Kulman, Defendants.

Civ. A. No. 65-C-7-L.

United States District Court
W. D. Virginia,
Lynchburg Division.

Jan. 8, 1968.

Maurice Steingold, Steingold, Steingold & Chovitz, Norfolk, Va., for plaintiff.

Howard W. Rhodes, Jr., Rhodes & Jennings, Lynchburg, Va., for defendant.

Richard E. Payne, Lynchburg, Va., Special Master.

## OPINION AND ORDER

DALTON, Chief Judge.

The question is whether the burden of proof in the proceeding before the special master rests upon the plaintiff or the defendants.

The Court believes the burden is on the plaintiff.

Financial Services, Inc. (FSI) brought this suit to compel payment of amounts claimed due it by the defendants who

are operators of a retail clothing store in Lynchburg. The basis of the action is the agreement entered into by the parties July 17, 1963, typical of normal accounts receivable financing, whereby, subject to certain conditions, the plaintiff agreed to buy from the defendants accounts receivable generated by the defendants' retail clothing sales. From the pleadings it appears that out of the claimed $52,000 owed, the greater proportion arises out of uncollected accounts which apparently the customers of the clothing store were financially unable to pay. It also appears that the smaller portion of the amount due may have resulted from the defendants' having received and themselves retained monies which should have gone toward satisfying accounts receivable which were then the property of the plaintiff.

■ The rights of the parties are, of course, determined by the July, 1963 agreement. The plaintiff by an amendment to the complaint now, with respect to amounts due and uncollected on the accounts of customers, claims only that these amounts are unpaid as a result of the customer's financial inability to pay.

Construing the contract, as he was called upon to do, the special master ruled that under paragraph 5 full recourse by FSI against the defendant-Vendor could be obtained when the account became uncollectable only because of the customer's financial inability to pay and also where prior credit approval had not been obtained. However, the tenor of his decision was to place upon the defendants the burden of demonstrating as an affirmative defense that the loss resulted only through the customer's financial inability to pay.

The issue, then, is first of all whether the special master has properly construed the contract as to the conditions under which FSI has the right of chargeback and, secondly, whether he properly allocated the burden of proving the occurrence of these conditions upon the defendants-Vendors.

The Court agrees with his construction of the conditions upon the plaintiff's right of recourse, but feels that he improperly allocated the burden.

■ In construing the contract, the Court's thinking is as follows: The purpose of the contract is to vest ownership of the accounts receivable in the plaintiff, FSI, and to give the vendor a sufficient source of operating capital. To accomplish this, FSI obligated itself to purchase the accounts of the vendor. This is evident from paragraph 1 of the agreement. However, since in paragraph 1 FSI has obligated itself to purchase all such accounts generated, in paragraph 2 it protects itself by stating that those accounts which it has obligated itself to purchase are only those accounts for which prior credit approval has been given. Thus, FSI protects itself from having to purchase the account of an uncreditworthy person. At the same time, the option is left open to FSI to accept and to purchase if it wishes even an account originating without prior credit approval. The Court believes that FSI's acceptance of the account for which it did not give prior credit approval constitutes a binding acceptance and makes FSI owner of the account. This acceptance is not affected by paragraph 14 of the agreement.

FSI has also reserved for itself a second line of defense. Once having accepted an account on which there has been no obtainment of prior credit approval, FSI by paragraph 5 is permitted the conditioned right of full recourse should the account be uncollectable. Indeed, the very existence of the remedy provided in paragraph 5 contemplates that FSI will have accepted a number of accounts for which prior credit approval was not obtained. It is at this point necessary to keep in mind that the contract contemplates that FSI will become absolute owner of the accounts and that it is absolutely obligated to pay the vendor for them. FSI is relieved of this obligation only if the conditions appropriate to such relief, as spelled out in the contract, occur.

What are the circumstances relevant to this case under which FSI is relieved

of its obligation by being granted a right of full recourse against the vendor? They are those found in paragraph 5 of the agreement.

■ First or all, *all* purchases are subject to split-recourse; that is, each party bears half the loss where, regardless of any other circumstance, the loss of credit results from the financial inability of the customer to pay. It is obvious from the next sentence in paragraph 5 that the split-recourse is to occur when prior credit approval has been obtained from FSI. In this case, the parties have bargained that each will bear equally a loss resulting, in fact, from a mutual mistake as to the customer's credit worthiness. Furthermore, as noted above, paragraph 5 also gives FSI the right of full recourse where, other conditions met, there is an uncollectable account and it has not given prior credit approval as to that account. Both the terms *"full-recourse"* and *"split-recourse"* are defined in the last sentence of paragraph 5. Split-recourse is clearly defined to be applicable only where a loss of credit has resulted *from the financial inability of a customer to pay.* It is my belief that the use of the word *such* in that last sentence preceding the term *"full-recourse"* is intended to relate to a credit loss like that in the definition of *"split-recourse"* which results solely from the financial inability of the customer to pay. The Court concludes, therefore, that in order for FSI to avail itself of the remedy of full recourse against the vendor it must show the presence of two conditions: (1) that the loss occurred on an account for which no prior credit approval was obtained, and (2) that the loss on this account was occasioned solely as a result of the financial inability of the customer to pay—something that a proper credit application would undoubtedly be expected to turn up.

■ The burden of proving the occurrence of these conditions, therefore, falls upon FSI. Reading the contract as a whole this is the result which seems reasonable. Again, under the contract the accounts become the property of FSI. FSI is under an obligation to pay for them. FSI seeks relief from this obligation and looks to the provision in the contract which allows it qualified relief against having to bear the loss on uncollectable accounts. The contract gives FSI this right of recourse under certain conditions. FSI seeks to avail itself of the right of recourse and therefore it has the burden of proving the existence of the conditions which give rise to that right. The contract by its terms does not make the non-occurrence of either of the conditions an affirmative defense to be proved by the vendor in an action for recourse brought by FSI. Even if there were any ambiguity or uncertainty inherent in the contract, as to which party bears the burden, the same result would have to obtain as the contract prepared on a form supplied by FSI is to be construed most strictly against the party who drafted it. Furthermore, it would appear quite logical if the vendor submitted an account to FSI for purchase and if FSI accepted that account without prior credit approval that FSI would want assurance that the vendor would bear fully the risk of the credit worthiness of the customer. The vendor, on the other hand, who has in fact insured the credit worthiness of the customer does not want to be forced to reclaim the account unless it has been shown that the account was in fact uncollectable because of financial inability to pay the specific risk which the vendor had insured against.

The master, therefore, must take evidence as to whether the customers who defaulted did so because they were financially unable to pay. The plaintiff must bear the burden of establishing this fact. He must also take evidence as to whether prior credit approval was obtained as to the accounts in question.

Of course, if the parties continue to argue whether the defendant-vendor fulfilled his obligation under paragraph 6 which required that he forward all money received on accounts owned by

the FSI, the master must take evidence as to this point also.

 It also seems quite clear that if a loss resulted or if an account became uncollectable for any reason other than the financial inability of a customer to pay, the loss of this account would be borne solely by FSI. Such things as the customer's refusing to pay, his removal from the jurisdiction, or the running of the statute of limitations on the underlying obligation should be among those risks borne by FSI. And it is accordingly adjudged and ordered.

The Clerk is directed to send a copy of this opinion and order to counsel of record.